UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

Case No. 9:24cv80945

Patricia Donnelley and Douglas Stockham,

    Plaintiffs,

v.

John Doe and JP Morgan Chase Bank N.A.,

    Defendants.
_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

    Plaintiffs, Patricia Donnelley and Douglas Stockham, hereby sue Defendants, John Doe and JP Morgan Chase Bank, N.A., as follows:

**Nature of the Action**

    In July of 2023, Plaintiffs, Patricia Donnelley and Douglas Stockham ("Plaintiffs"), were in the process of transferring funds to their financial advisor, CBK Financial Solutions, LLC ("CBK"), for an investment. Defendant and hacker John Doe (the "Hacker") infiltrated CBK's email system and, while impersonating CBK personnel, fraudulently induced the Plaintiffs to initiate a wire transfer to an account controlled by the Hacker, rather than a true CBK account. Hacker thereafter transferred the funds to another of Hacker's accounts with Defendant JP Morgan Chase Bank N.A. ("Chase"). The Hacker's felonious actions were discovered in time to avert the theft of Plaintiffs' funds and, as a result, Plaintiffs' respective banks immediately notified Chase of the ongoing fraud. While Chase affirmatively represented to Plaintiffs that it had undertaken steps to safeguard the funds by freezing the Hacker's account, that undertaking was a disaster. In addition to unfreezing the funds and executing the Hacker's order to transfer them away to yet

1

another account without conducting any security review, Chase failed to notify Plaintiffs of its change in course, preventing Plaintiffs from taking necessary protective actions—such as filing for an emergency injunction. Chase's actions and inactions allowed the Hacker to succeed in his theft and facilitated what could have otherwise been a preventable loss. Chase should now be called to answer to the Plaintiffs for that negligence.

### The Parties

1. Plaintiff Patricia Donnelley ("Mrs. Donnelley") is a Florida citizen residing in Palm Beach County, Florida.

2. Plaintiff Douglas Stockham ("Mr. Stockham") is a Florida citizen residing in Palm Beach County, Florida.

3. Defendant John Doe (the "Hacker") is an unknown person or persons.

4. Defendant Chase is a national banking association organized under the laws of the United States with its main office, as designated in its articles of association, in Columbus, Ohio, and thus, is deemed a citizen of Ohio.

### Jurisdiction and Venue

5. This Court has subject matter jurisdiction over the federal claims alleged in Count I under 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over the state claims alleged in Counts II through VII under 28 U.S.C. § 1367 because they arise from the same material facts as the federal question counts and are so related that they form part of the same controversy.

6. This Court also has subject matter jurisdiction over the state claims alleged in Counts II through VII under 28 U.S.C. § 1332 because the parties are diverse and the amount in dispute exceeds $75,000.

2

7. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this district.

**General Allegations**

8. In mid-July 2023, the Plaintiffs were in the process of making an investment of $480,000 with CBK, a financial advisor firm located in Palm Beach County, Florida.

9. Unbeknownst to the Plaintiffs, the Hacker had gained access to certain aspects of CBK's e-mail system to steal CBK's customers' funds.

10. Upon information and belief, the Hacker used computer codes and programs to access CBK's e-mail server through the internet without authorization.

11. After the Hacker accessed CBK's e-mail servers, he monitored, accessed and intercepted the emails between CBK and its customers, including the Plaintiffs, containing confidential and proprietary information about their investment, contact information and other protected financial information.

12. On or about July 16, 2023, Kyle McFadden ("Mr. McFadden"), one of CBK's financial advisors, sent the Plaintiffs an e-mail from his corporate e-mail address at CBK—km@cbkfs.com—attaching wire instructions to CBK's bank account so the Plaintiffs could transfer the funds to be invested with and managed by CBK (the "July 16 E-mail"). A copy of the July 16 E-mail is attached here as **Exhibit "A."**

13. Using computer codes and programs, the Hacker accessed and intercepted the July 16 E-mail before it reached the Plaintiffs. Then, on July 17, 2023, the Hacker sent an email to Plaintiffs from Mr. McFadden's km@cbkfs.com e-mail account (the "July 17 E-mail"), wherein the Hacker had replaced CBK's wire instructions with wire instructions to one of the Hacker's

bank accounts with Truist Financial Corporation ("Truist"). A copy of the July 17 E-mail is attached here as **Exhibit "B."**

14. When the plaintiffs received the July 17 E-mail from km@cbkfs.com, they believed it was sent by the true Mr. McFadden with proper wire instructions for their investment with CBK.

15. On July 19, 2023, the Plaintiffs, misled by the Hacker's wrongful and fraudulent actions, made two wire transfers totaling $480,000.00 (the "Funds") into the Hacker's Truist account. Mrs. Donnelley wired $400,000.00 from her account with First Horizon Bank, and Mr. Stockham wired $80,000.00 from his account with South State Bank.

16. On July 20, 2023, Mr. McFadden called the Plaintiffs to inform them that CBK's e-mail system had been compromised by the Hacker, who had stolen the funds of other CBK customers and, possibly, the Plaintiffs' too. The Plaintiffs immediately contacted First Horizon Bank's and South State Bank's fraud departments and reported the ongoing fraud.

17. Later that day, Cheryl R. Cordes ("Ms. Cordes"), First Horizon Bank's Vice President and West Palm Beach branch manager, represented to the Plaintiffs that First Horizon Bank was putting its best and most aggressive fraud officer, Eileen Lam ("Ms. Lam"), in charge of this investigation.

18. On July 21, 2023, Ms. Cordes called the Plaintiffs and represented that Ms. Lam and other fraud officers at First Horizon Bank had been in contact with Truist's fraud department and learned that Truist had already executed a wire to transfer the Funds at the Hacker's request into an account with the Defendant Chase.

19. Ms. Cordes further represented that Ms. Lam had also contacted Chase on behalf of the Plaintiffs to notify Chase of the ongoing fraud perpetrated by the Hacker, including wire

4

fraud against several CBK customers. According to Ms. Lam, the Funds were still in transit and Defendant Chase had agreed to undertake measures to safeguard the Funds.

20. Additionally, fraud officers working for the Plaintiffs' banks, including Ms. Lam with First Horizon Bank and others with South State Bank, notified Chase on behalf of the Plaintiffs that the Hacker had gained possession of the Plaintiff's Funds through wire fraud and then caused the Funds to be transferred into an account at Chase, with the intent of committing fraud against the Plaintiffs and stealing the Funds.

21. This was corroborated by Mr. McFadden, who was in direct contact with Truist's fraud department on behalf of Plaintiffs between July 20 through 22, 2023. According to Mr. McFadden, Truist's fraud officers had also informed Chase of the Hacker's ongoing fraud, and received written confirmation from Chase that the Funds were frozen.

22. When the Plaintiffs' Funds cleared and came into Chase's possession on or about July 22, 2023, Chase had already received requests to reverse the wires from Truist's, First Horizon Bank's and South State Bank's fraud officers. At that time, Defendant Chase had, or should have had, actual knowledge of the ongoing fraud.

23. Defendant Chase's actual knowledge of the fraud is evidenced by the fact that its fraud officers received and reviewed the information regarding the ongoing fraud provided by Ms. Lam and the other fraud officers working for the Plaintiffs' banks and Truist.

24. Chase's knowledge of the Hacker's ongoing fraud is further evidenced by the fact that its fraud officers located the stolen Funds that were being transferred into one of Chase's accounts owned by the Hacker and represented to Mrs. Lam and other fraud officers, including Truist's, that they had activated their fraud protocols and that "the Funds were temporarily frozen."

25. Specifically, Chase froze the Funds to prevent the Hacker from transferring the Funds out of Chase's control.

26. Despite Chase's initial efforts to protect the Funds, it later inexplicably permitted the Hacker to transfer them out of Chase into an unknown account.

27. Without requesting Plaintiffs' authorization or providing any notice to Plaintiffs or their agents, Chase abandoned its undertaking to protect Plaintiffs' Funds from the wrongful and fraudulent actions of Hacker and accepted an order from the Hacker to wire the Funds to another bank account outside of Chase.

28. Chase's actions effectively deprived Plaintiffs of the Funds.

29. On October 20, 2023, Plaintiffs made a written demand on Chase to return the Funds.

30. As of the filing of this action, Chase has not responded to the Plaintiffs' demand and has otherwise refused to return the Funds.

31. To recover their Funds, the Plaintiffs have retained the undersigned counsel and are incurring attorney's fees and costs.

32. All conditions precedent to this action have been performed, occurred, been excused, been waived, or otherwise satisfied.

## Causes of Action

### Count I – Violation of the Federal Wire Tap Act, 18 U.S.C. § 2510, *et seq.*
*(by Plaintiffs against Defendant John Doe)*

33. Plaintiffs reallege paragraphs 1 through 32 above as if fully set forth herein.

34. The Federal Wiretap Act, as amended by the Electronic Communications Privacy Act of 1986 (the "ECPA"), prohibits the intentional interception of the contents of any wire, oral, or electronic communication through the use of a device. 18 U.S.C. § 2511.

35. The Hacker used electronic means to intercept Plaintiffs' e-mail communications with Mr. McFadden and CBK.

36. The ECPA protects both the sending and receiving of communications and provides for a private right of action to any person whose wire, oral, or electronic communication is intercepted. 18 U.S.C. § 2520(a).

37. Plaintiffs and the Hacker are "persons" under 18 U.S.C. § 2510(6).

38. The Hacker intentionally intercepted the contents of Plaintiffs' wire and electronic communications by surreptitiously hacking into and monitoring CBK's e-mail system and servers, deleting communications between Mr. McFadden and CBK, impersonating Mr. McFadden and CBK, and sending fraudulent wire instructions to the Plaintiffs.

39. The Hacker has intentionally used the content of the intercepted wire and electronic communications and actively impersonated Mr. McFadden to steal Plaintiffs' Funds, knowing that such action violated 18 U.S.C. § 2511 and other sections of 18 U.S.C. Chapter 119.

40. As a direct and proximate result of the Hacker's wrongful and fraudulent actions, Plaintiffs have been severely injured and deprived of funds in excess of $480,000.00.

41. John Doe was aware that its monitoring and intercepting of Plaintiffs' communications with CBK, as set forth above, caused damage to Plaintiffs and has taken no remedial actions.

### Count II – Conversion
*(by Plaintiffs against Defendant John Doe)*

42. Plaintiffs reallege paragraphs 1 through 32 above as if fully set forth herein.

43. The Plaintiffs' Funds transferred into the Hacker's accounts through the Hacker's wrongful and fraudulent actions are easily identifiable. Each of the two wires consists of a single

lump-sum online transfer from the Plaintiffs to the Hacker's account in the amount of $400,000.00 and $80,000.00, respectively.

44. The Funds are the Plaintiffs' property, and the Plaintiffs have an immediate right of possession thereto.

45. The Hacker misappropriated the Funds and, upon information and belief, remains in possession thereof.

46. The Plaintiffs have been damaged, and continue to be damaged, by the Hacker's misappropriation of the Funds and continued refusal to return the same to the Plaintiffs.

### Count III – Aiding and Abetting Conversion
*(by Plaintiffs against Defendant Chase)*

47. Plaintiffs reallege paragraphs 1 through 32 above as if fully set forth herein.

48. The Hacker converted Plaintiffs' Funds by fraudulently inducing the Plaintiffs to transfer the Funds to the Hacker's bank account.

49. Chase had, or should have had, actual notice of the Hacker's ongoing fraud because (1) Ms. Lam and other fraud officers with First Horizon Bank, South State Bank and Truist had so notified to Chase's fraud officers; (2) Chase activated its fraud protocol and frozen the Funds; and (3) Chase took steps to review the transaction before unfreezing the Funds, which necessarily revealed the actual fraud being perpetrated.

50. Chase substantially assisted the Hacker by unfreezing the Funds and executing the Hacker's order to wire the Funds out of Chase. Without Chase's assistance, the Hacker would not have been able to convert the Funds.

51. Chase's execution of the wire order from the Hacker was an exercise of dominion and control over the Funds inconsistent with Chase's knowledge of the Plaintiffs' ownership of the Funds.

## Count IV – Conversion
*(by Plaintiffs against Defendant Chase)*

52. Plaintiffs reallege paragraphs 1 through 32 above as if fully set forth herein.

53. At all relevant times, the Plaintiffs have been the owners of the Funds and have an immediate right of possession thereto.

54. Chase had actual knowledge that the Funds belonged to the Plaintiffs and that the Hacker had stolen them before the Funds had cleared at the Hacker's account with Chase.

55. Before the Funds had cleared, Chase received requests from the Plaintiffs' banks and Truist to reverse the fraudulent wires made before the Funds had cleared at the Hacker's account.

56. Chase, however, not only failed to prevent the Funds from clearing at the Hacker's account and reverse the fraudulent wires but executed a subsequent wire request by the Hacker to transfer the Funds out of Chase's control. Chase executed this wire transfer after having actual knowledge that (1) the Plaintiffs were the owners of the Funds; (2) the Hacker had obtained the Funds through wrongful and fraudulent actions, including wire fraud; and (3) the Hacker's wire request was part of an ongoing scheme to steal the Plaintiffs' Funds.

57. Chase's act of dominion over the Plaintiffs' Funds is inconsistent with the Plaintiffs' ownership thereof and right of possession thereto.

58. On October 20, 2023, the Plaintiffs demanded that Defendant Chase return the Funds, but Chase refused to do so.

## Count VI – Breach of Fiduciary Duties
*(by Plaintiffs against Defendant Chase)*

59. Plaintiffs reallege paragraphs 1 through 32 above as if fully set forth herein.

60. Ms. Lam and other fraud officers for First Horizon Bank, South State Bank and Truist, acting on the Plaintiffs' behalf, communicated with Chase's fraud officers and explained the Hacker's wrongful and fraudulent actions, including wire fraud, to steal the Plaintiffs' Funds.

61. Upon learning of the Hacker's wrongful and fraudulent actions, Chase agreed to safeguard the Plaintiffs' Funds. To that end, Chase represented to Ms. Lam and other fraud officers working for Plaintiffs' banks and Truist that Chase activated its fraud protocols and froze the Funds so the Hacker could not control them.

62. Plaintiffs learned of Chase's agreement to safeguard the Funds and relied on Chase's promises and representations and reposed trust in Chase that it would act in a manner consistent with its representations and would protect the Plaintiffs' interest in the Funds.

63. By agreeing to safeguard the Plaintiffs' Funds, Chase accepted such trust and undertook fiduciary duties to act in a manner consistent with the Plaintiffs' best interest. Under these facts, Chase owed fiduciary duties to Plaintiffs.

64. Chase did not deliver on its promises, failed to protect the Funds from the Hacker's wrongful and fraudulent actions and knowingly took actions that facilitated the Hacker's theft of the Funds.

65. Specifically, Chase did not act as agreed because:

    a. Chase did not follow its own fraud protocols before executing the Hacker's wire request and transferring the Funds out of Chase's control;

    b. Chase did not follow reasonable fraud detection procedures before executing the Hacker's wire request and transferring the Funds out of Chase's control; and

      c.      Chase never contacted the Plaintiffs to notify them that it would cease safeguarding their Funds before it executed the Hacker's wire request and transferred the Funds out of Chase's control.

66.      Chase's failure to follow through with its promises regarding safeguarding the Plaintiffs' Funds is a breach of Defendant Chase's fiduciary duties to Plaintiffs.

67.      Furthermore, Chase's failure to notify the Plaintiffs that it did not intend to continue safeguarding their Funds as promised, including the freeze it put on the Funds, prevented the Plaintiffs from taking any other action available to them at that time—such as seeking injunctive relief on an emergency basis.

68.      As a result of this breach, the Plaintiffs have been damaged.

### Count VII – Negligence
*(by Plaintiffs against Defendant Chase)*

69.      Plaintiffs reallege paragraphs 1 through 32 above as if fully set forth herein.

70.      Ms. Lam and other fraud officers for First Horizon Bank, South State Bank and Truist, acting on the Plaintiffs' behalf, communicated with Chase's fraud officers and explained the Hacker's wrongful and fraudulent actions, including wire fraud, to steal the Plaintiffs' Funds.

71.      Upon learning of the Hacker's wrongful and fraudulent actions, Chase agreed to safeguard the Plaintiffs' Funds. To that end, Chase represented to Ms. Lam and other fraud officers working for Plaintiffs' banks and Truist that Chase activated its fraud protocols and froze the Funds so the Hacker could not control them.

72.      By agreeing to safeguard the Plaintiffs' Funds, Chase accepted such trust and undertook an obligation to act in a manner consistent with its representations and, specifically, to protect the Plaintiffs' interest in the Funds.

73. In particular, Chase undertook a duty not to disburse Plaintiffs' Funds to unauthorized persons in an unreasonable manner that would cause the Funds to be stolen.

74. It was a foreseeable risk that disbursing the Funds to the Hacker without conducting a reasonable review of the information available at that time to Chase would cause the Funds to be lost or stolen. Chase assumed this risk when it voluntarily undertook a duty to safeguard the Funds by activating its fraud protocols and freezing them.

75. Chase had total control over the frozen Funds and was in the best position to avert the Hacker's ongoing fraud efforts to steal the Funds.

76. Under these facts, Chase owed a duty of care to Plaintiffs.

77. Chase breached its duty by, *inter alia*:

   a. Failing to conduct a reasonable investigation of the ongoing fraud, which fraud was evidenced by the information already available to Chase at all relevant times, including the information provided by Ms. Lam and other fraud officers with First Horizon Bank, South State Bank and Truist working on the Plaintiffs' behalf;

   b. Failing to adopt reasonable measures to prevent the Hacker from gaining control over the Funds, including failing to maintain the Funds frozen;

   c. Accepting the Hacker's wire request to transfer the Funds outside of Chase; and

   d. Failing to notify Plaintiffs that Chase would cease its efforts to safeguard the Funds.

78. As a result of these breaches, the Hacker stole the Funds and Plaintiffs have been damaged.

**Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor as follows:

A. Judgment against Defendant John Doe, the Hacker, in Counts I and II;

B. Judgment against Defendant Chase in Counts III through VII;

C. Award damages in an amount to be determined at trial;

D. Court costs as permitted by law;

E. Pre- and post-judgment interest; and

F. Award such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury in this action on all issues so triable.

Date: August 5, 2024

Respectfully submitted,

**McArdle Franco PLLC**

*Counsel for Plaintiffs*
*Patricia Donnelley and Douglas Stockham*
255 Alhambra Circle, Suite 925
Coral Gables, Florida 33134
Telephone: (305) 442-2214
xfranco@mcardlefranco.com;
varca@mcardlefranco.com

By: */s/ Victor Arca*
   Xavier Franco, Esq.
   Florida Bar No. 31823
   Victor Arca, Esq.
   Florida Bar No. 1014225